Mr. Justice Hagner
delivered the opinion of the Court:
This case, which was submitted without any argument or explanation, presents an interesting question as to the jurisdiction of this court in cases for the enforcement of mechanics’ liens. The complainant gave notice of his lien and filed a bill with apt averments, alleging he was a sub-contractor; that he did work on defendant’s stable, upon which the balance claimed was still due; and that the principal contractor gave him an order on the defendant which the defendant refused to pay because as he said, the contractor had left the work, and had been fully paid for all the work he had done.
The testimony taken in the case, all of which was adduced by the complainant, thoroughly supports the allegations of the bill, showing that the claimant, upon the defences raised by the answer was entitled to recover. A decree was passed dismissing the bill, upon the ground, as we were induced-to suppose, that the amount claimed which was only $28, is beneath the jurisdiction of the chancery court.
This objection could only be based upon some special statute passed by Congress affecting the jurisdiction of this court, or upon some general principle of chancery practice to which we have fallen heir from the Maryland courts. The only provision on the subject in the Revised Statutes which could be held to be applicable is section 769, which declares: “The justices of the Supreme Court shall not hold original plea of any debt or damage in cases within the jurisdiction given to. justices of the peace, which shall not *185 exceed $50, exclusive of costs.” We think it clear this section does not apply to mechanics’ liens. The litigations in which the court is forbidden to hold original plea are described as cases “ of debt or damage within the jurisdiction given to justices of the peace.” As no authority is given to justices of the peace in section 997, which is the chart of their jurisdiction, or elsewhere, to interfere at all in proceedings to enforce mechanics’ liens, we think those proceedings are quite without the operation of section 769.
Neither are they within the limitation imposed upon the Chancery Court of Maryland, by the act of 1777, chapter 41, in force here. That act provided that “ His Majesty’s Court of Chancery within this province shall not hear, try, determine or give relief in any cause, matter or thing, wherein the original debt or damages doth' not amount to twelve hundred and one pounds of tobacco, or five pounds and one penny in money” — which, according to the rules for reducing tobacco to our currency, would amount to a little more than $20. (Reynolds vs. Howard, 3 Maryland Ch., 333.) This provision could not control the present case because the amount here involved is $28; but as it may be important in other cases, it is proper to say we think the statute has no application to the special authority to enforce mechanics’ liens superadded by the act of Congress, to the general jurisdiction of chancery.
The statute first giving authority to enforce mechanics’ liens was not .passed until 1859, and the present law, chapter 143 of 1884, sections 2 and 5, states distinctly that “the proceedings to enforce the lien created by this act must be by a bill in equity,” etc.
This is clearly an additional jurisdiction outside of that to which the court was entitled when the legislature passed the act of 1777, ch. 41.
In the original law of 1859, found in section 692, authority is given to the claimant to file a notice of lien against buildings, land and other property, etc., only “ when the amount exceeds twenty dollars.” In the present law that limit is *186 omitted, which plainly evinces a legislative intention that thereafter there should be no limitation as to the amount required to give jurisdiction.
The inconvenience which may be suggested as likely to arise from the prosecution in equity of such petty claims under the mechanics’ lien law, cannot interfere with our duty to enforce the clear right given to the suitor. However insignificant the'amount,, it may be very important to the claimant, and he must have his rights whether his claim is small or large. The supposed inconvenience might be somewhat controlled by the action of the court. Although it may be compelled to give a decree for the sale of the property to pay a very small sum, it would still have control of the question of costs, and if there should appear to be a disposition to harass a debtor by needlessly instituting such proceedings and thus take a vexatious advantage of the power given by this law, it would be within the competency of the court to impose the costs on the gaining party.-
This decree is reversed, and the cause remanded for further proceedings.
After the foregoing opinion was delivered, the solicitor for the defendant filed a petition for a rehearing, which the court in an opinion handed down November 14, 1892, refused to allow. On this petition Mr. Justice Hagner delivered the opinion of the court:
In the case of Hollohan against Young, which was decided last week by this court, an application has been made, for a re-argument. The petition for a rehearing sets forth that the. case was submitted, by consent, and after due consideration by the court a decree was made reversing the decree of the court below; that this court reversed the decree-of the court below on the question of the amount of money necessary to give jurisdiction to the equity court. The petition then sets forth:
. “ Third. The point upon which it is respectfully urged. *187 for a rehearing is that the evidence in the case manifestly shows collusion between the complainant and the contractor to mulct the defendant in damages to the extent of the sum claimed by the complainant; and as this point was not decided by the court, it is respectfully submitted that the court will, upon consideration of this petition, grant a rehearing. The evidence to. establish such collusion, as above stated, is apparent in the record.”
It is quite apparent that counsel who prepared this petition could not have heard what was said by the court in its opinion. The case was submitted to us without argument, and without any intimation as to what was the trouble.' So far from the case not having been examined, there was not one syllable in it, from the first word of the petition to the last word of the decree, that was not read carefully by the court. We were utterly at a loss to know what the difficulty was. As I stated'the other day, the case was without difficulty, so far as the indebtedness of the complainant to the defendant was concerned, and as to the right of the complainant, on the face of the papers, to a lien. Then we observed that the amount of the 'claim was only $28; and as this question about the jurisdiction of the court had been repeatedly brought up in other tribunals, it occurred to us this was the real question intended to be raised. After some inquiry, we came to the conclusion this was really the ground of the appeal; and therefore we examined and decided that point.
We have again read the’ whole case. The petition is in the usual form, alleging the work by the complainant, as á sub-contractor, and that this balance was due; that an order had been given by the sub-contractor upon the owner, and the owner had not paid it. He said he did not know whether the work was done or not; that he never knew Hollohan and never employed him; and never saw him oh the building; that the contractor did not complete the work, but left it before it was finished; that he paid the contractor for all the work he had done on the building. That idea of *188 collusion never made its appearance in the case until the complainant, on cross-examination, said that besides working for Scott the contractor on this stable, he also worked for him on other property on Callan street, and elsewhere. Then follows an examination, the purpose of which was, apparently, to show that the contractor Scott might have endeavored to pay the debt which he owed to this complainant for work elsewhere, by putting it on She defendant Young. But such a pretence as this must be supported by evidence. There were four witnesses examined, all on behalf of the complainant, and no one on behalf of the defendant, who did not testify in the case, and not a syllable of evidence exists which can establish any such pretence. Two of the witnesses for the complainant are fellow-workmen, and they simply say that they know the defendant did the work; one of them kept the time of the, men employed, and both testified they know this balance is due.
When the complainant testified, upon the claim of collusion, he was asked: “The $28 which you charge against Mr. Young’s building, was that for work done there wholly, and nowhere else?”
(Objected to by Mr. Johnson, because witness should have given this testimony in chief, and not on re-direct testimony.)
“A. Yes, sir.”
Then follows the testimony of the two fellow-workmen of the defendant, and finally the testimony of Scott, the contractor, who says in three places that this $28 is due for work done on this stable; that he had paid him everything for all other work, and that this charge had no sort of connection with the work on any other building. He testified:
“ I left the $28 to be collected by a lien on Young’s property, and paid him for everything else he did for me after that. During the erection of the stable, I did tell Mr. Young, at the commencement of the work, that I did not owe the men anything. I exhausted all that I had. It would take more than $28 to complete the stable.”
*189 We have no hesitation in expressing the opinion the case was properly decided before; and we overrule the motion for a re-argument. Counsel for the complainant will prepare a decree declaring a lien and judgment, and allowing the sale, if necessary to make the money, and we will sign it.